ELANOR BURNETT, BY NEXT FRIEND, AND FRANKLIN P. BURNETT, RESPONDENTS, v. SUPERIOR REALTY COMPANY, A CORPORATION, APPELLANT.

Submitted March· 26, 1917—Decided June 18, 1917.

On appeal from the Supreme Court, in which court the following memorandum was filed by Mr. Justice Parker:

"This appeal brings up a judgment recovered by the plaintiff, an infant of tender years, based upon the verdict of a jury for damages sustained by an accident. The grounds of appeal are for the most part indefinite and do not point out any legal error on the part of the trial court except the first, which sets up that the trial court refused to grant the motion for a nonsuit, and the second, that the court refused to grant a direction of a verdict in favor of the defendant. With the third, which is, that the verdict is contrary to the weight of evidence, we have nothing to do on this appeal; the fourth, that the charge was erroneous in law, specifies no error; the same may be said of the fifth, that the charge of the court on the measure of damages was based upon an erroneous rule of law; the sixth, that the damages were excessive, is not open to consideration at this time; the seventh, that there is no evidence of negligence on the part of the defendant, is covered by grounds one and two; and the eighth, and last, that the court admitted illegal evidence for the plaintiffs, is similar to the fourth in failing to specify what illegal evidence is complained

of and was objected to at the trial. The sole question therefore is whether there was a case for the jury.

"The plaintiff, a little girl of tender years, and too young to testify, was injured in the back yard of the apartment-house or tenement-house where she lived with her parents on the ground floor, by a mortar box about six feet long and four feet wide, falling over upon her. No one saw it fall, but the child was heard to scream and was found lying flat on the ground on her face with the box lying over her. It was inferable from the evidence that the mortar box had been stored in the yard on its edge so that it might easily be caused to fall in the manner in which it did fall.

"Two important questions in the case are, whether there was evidence to justify a jury in finding that the infant plaintiff was invited by the owner of the premises, the defendant, to use the yard as a playground, and, secondly, if so, whether there was evidence to justify the jury in further finding that the fall of the box was due to any negligence that could be brought home to the defendant company. Both of these questions turn to some extent upon questions of authority, expressly or impliedly, or ostensibly conferred upon the defendant as its agent.

"The defendant is the owner of the property. It turned over the management of the property to another corporation called the Progressive Investment Company, which seems to have been engaged in the real estate business, as its agent, to manage and control the house and apartments and collect the rents, and generally attend to the usual details of the landlord's agent. That corporation had an employe named Rashkober, who was entrusted, as the jury might find, with the duty of collecting rents and attending to repairs. He also undertook to settle disputes among the tenants. He seems to have lived there on the premises, or next door, or near by, so that he was readily accessible to tenants. In addition to this, there was a janitress of the building named Mrs. Leise, who also seems to have taken more or less part in the renting of the premises, especially in showing rooms and in the preliminary negotiations for rental. There are various circum-

stances in the case which bear both on the question of agency and of negligence, and therefore are recited together.

"We think it sufficiently appears as a jury question that the rooms were rented to the Burnetts with a specific privilege of the yard for their children. The evidence indicates that Mrs. Burnett, who went to arrange for the rental, dealt with the janitress, who offered her the second floor rooms, and Mrs. Burnett refused to take them, and insisted on the ground floor on account of the children. She said that she told the janitress at the time that she was moving from the second floor. There was no denial that the children played in the yard without objection. The mortar box, and a quantity of other impedimenta, such as planks and garden tools, belonged to, or were in the possession of, another tenant of the building named Weissman, who caused them to be put in the yard. As soon as the mortar box and these other articles came into the yard, Mr. Burnett complained to Rashkober on the ground that the yard was for the children, and, according to the testimony, Rashkober said that he would see Weissman at once in the matter. It appears that he did see Weissman and had a dispute with him on the matter of storing these articles in the yard. It also appears that Burnett announced his intention of making complaint at the office of the agents, and that Rashkober told Burnett that it was his (Rashkober's) business. It further appears that on one occasion when Burnett had an errand at the office of the Progressive Investment Company about his rent book, he was informed that Rashkober was the agent, and that if he did not have rent books the office would furnish them to him. We think that these facts show at least an ostensible agency of Rashkober and the janitress for the defendant company under the doctrine of *Klitch* v. *Betts,* 89 *N. J. L.* 348, and a question for the jury as to whether the plaintiff, in common with the other children, was entitled to use the yard to play in.

"The case is different from *Saunders* v. *Realty Company.* 84 *N. J. L.* 276, in that the lease in the present case was oral, and, as the jury might find, the use of the back yard was under discussion at the time the lease was made and was an

inducement to Mrs. Burnett to take the ground floor rooms instead of rooms on the second floor.

"We, therefore, approach the question whether there was evidence for a jury of negligence on the part of the defendant in permitting the box put in by Weissman to remain in the yard an unreasonable time after the defendant had notice, or should in the ordinary course of things have taken notice that it was there and was likely to be dangerous to children using the yard. That it was a menace to children is plainly a jury question, from the fact that it fell over on one of the children, and could not have done so because of its weight, some four hundred pounds, unless it was balanced in a position to be easily upset.

"Now, as to the question of notice and reasonable time, the jury was entitled to find that the box came in the yard on Tuesday afternoon about twenty-four hours before the accident; that Burnett, the father, saw the box and other articles, and complained almost immediately to Rashkober, who, as already stated, lived in the building or next door. The basis of the complaint is not entirely clear on the evidence, whether it was an obstruction to the yard or the foul odors from the lumber, which consisted of old stable planking, or the danger to children. It does appear, however, that Burnett said to Rashkober on that occasion: 'Here is a box weighs about four hundred pounds lies in the yard now.' I says, 'I want this stopped. When I hired the house I had Mrs. Leise, the janitress, take a lamp and show us the yard.' I said: 'A little boy was hurt when we lived on the second floor, and that is what I hired this yard for.' He said, 'I will go up and see Weissman.' And he came back and said: 'Well, I have been up and told Weissman I wanted this stopped, and Weissman said, "My boy put the box in the yard." '

"Burnett testified that he had complained to Rashkober some nine days or two weeks before, when Weissman first began to put implements into the yard, and that the above conversation was later when the box came in. From this, and the other evidence, we conclude that it was at least an inference for the

jury that Rashkober was notified that the premises were rendered unsuitable, if not, indeed, dangerous, for children.

"The only remaining question is whether the jury was entitled to say that there was an unreasonable delay in removing the box or rendering the yard safe. The case does not present the question of reasonable time for discovery of the box in the absence of express notice, as in *Timlan* v. *Dilworth*, 76 *N. J. L.* 568, but of reasonable time after notice within which the conditions might and should have been remedied. As the jury might find, about twenty-four hours elapsed after notice of the dangerous condition; the obstruction of the yard began apparently some nine days before and seemed to have been farming utensils that might be dangerous in themselves to children. As on the other branches of the case, we think that the question of unreasonable delay in attending to the matter was also for the jury.

"This result disposes of the questions arising on the motion to nonsuit and to direct a verdict for the defendant; and as no other trial errors, if existing, are adequately presented, we conclude that the judgment below must be affirmed.

"Mr. Justice Bergen concurs."

For the respondents, *Peter Steinsitz.*

For the appellant, *James P. Mylod.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Parker in the Supreme Court.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   12.

*For reversal*—None.